FLOYD WOOD, Claimant, *v.* THE STATE OF NEW YORK.

Claim No. 17476.

Court of Claims, December, 1923.

*State — claim for damages to land abutting state highway by reason of inadequacy of culvert to carry storm water — storm was of such intensity as to raise water ten feet over highway — state not negligent where it could not reasonably be expected to anticipate such unusual conditions.*

CLAIM for damages to land abutting state highway.

*Olmsted, Van Bergen & Searl,* for claimant.

*Carl Sherman,* attorney-general (*Thomas E. Dougherty,* deputy attorney-general), for State of New York.

MORSCHAUSER, J. The claimant in presenting his claim against the state alleges that the state was guilty of negligence due to the construction and maintenance of a sluiceway crossing a state highway in the town of Camillus, Onondaga county, N. Y., which was negligently and carelessly constructed and which was wholly inadequate to carry storm water across the state highway and that by reason of the negligence of the employees of the state in blocking the course of such stream with certain automobiles, owned and operated by the state highway department, diverted said stream upon the claimant's land, consisting of about one acre of land, more or less, and a dwelling and barn; that on the 17th day of

June, 1922, the claimant was in the occupation of said premises and of the house and buildings thereon, and that the said premises were planted with flowers, vegetables and garden truck; that immediately in front of the claimant's premises there is a state highway built, constructed and maintained by the state of New York and that a stream crosses said highway at a point just south of the claimant's premises where the state heretofore constructed and maintains a culvert to carry the waters of said stream across said highway; that the said culvert was negligently and improperly constructed, and was wholly inadequate to carry the waters of said stream in times of heavy rain, and that continuously since the said culvert has been built, the said stream in times of storm, or high water, had filled up the culvert with stone, earth and debris, and had flowed over the surface of said state road and deposited thereon large quantities of stone, earth and refuse, of all of which facts the state of New York had notice and knowledge; that on the said date there were two automobile trucks, which were at the place where the said stream crosses the state highway, and were engaged in removing from the said state highway a large quantity of earth, stone and debris which had been deposited upon the highway by a flood caused by a rain storm, which had occurred one week previously, which caused the highway to overflow and brought down great quantities of earth, small trees, parts of buildings, fences and other debris and that the said automobile trucks formed an obstruction in the path of the storm causing the water to overflow upon claimant's premises and damaged the same to the extent of $1,925.

The evidence upon the trial established the fact that when the state built this highway it placed a sluiceway or culvert under this highway to carry off the waters across the highway and that the culvert that the state built at the time when it made its new highway was larger than the culvert that had formerly been used to carry this water under the highway; that about a week prior to the time that claimant's land was flooded there was a severe rain storm which carried large quantities of debris down stream and clogged up the culvert and threw a large quantity of debris and stone in and upon the highway. The storm occurred on a Sunday and the following day the state with its employees and truck began cleaning away the debris from the highway and making the road safe for travel. Upon the completion of that work the state began to take the debris that had accumulated in the culvert out of the same and to clear the culvert and for that purpose had standing on the highway the two trucks for the purpose of carrying away the dirt, stones, etc., that were taken out of the culvert and from the highway, and the state was still at this work when the

second flood occurred. At that time the trucks were standing on the edge of the highway over or near the point where the culvert is built. On the day of the second flood there occurred what some of the witnesses called a cloudburst and then a few moments after the storm had commenced great volumes of water came down the stream and through a ravine carrying boulders down the stream something like 600 feet, carrying a barn belonging to the owner of adjoining property down over the highway causing great quantities of debris to gather against the trucks and carrying them across the highway. The witnesses stated that the depth of the water across the highway was something like ten feet. This water came upon the premises of the claimant, destroying all vegetation that was growing thereon, and also took away considerable of the soil, injured his buildings and carried away an automobile which was completely demolished. When the storm first began the claimant removed his automobile to higher ground from where it was standing at the time for the purpose of preventing the flood from reaching it but the storm and flood was so unusual, that it did come up so suddenly, and there was such quantities of water that the water reached the automobile and carried it some distance and demolished it.

There was evidence that a few moments before the storm became severe a witness went to the driver of the trucks, who was at that time in the barn to avoid the storm, and told him that he thought that the waters would raise sufficiently to injure his automobile.

The claimant asserted that this was a notice to the state that the trucks were obstructing the course of the flow of the water and caused the damage to the claimant. We do not think so. The claimant further alleges that the automobile trucks having been carried across the stream by the flood formed an obstruction and diverted the water so that it came in and upon claimant's premises. The culvert as built by the state was larger than the one that had been built by the highway authorities upon the highway that had existed before the state highway was built. The state was not negligent in failing to clean out the culvert at once. The flood that caused the debris to accumulate in and about the culvert occurred on a Sunday and the state commenced the following Monday to clear away the debris. Its first duty was to make the highway safe for travel and this it commenced to do and when that work was finished it began cleaning out the culvert, but even though the culvert had been thoroughly cleaned at the time of the flood we do not think that it would have made much difference as the volume of water was so great that even if the culvert had been cleaned it would not have 'materially changed the effect of the water on claimant's premises.

The state was not guilty of negligence by allowing these trucks to stand on the highway where it needed them to load the debris. The storm was such an unusual one that it cannot be said that the state could anticipate such a severe storm and we do not believe that the trucks deflected the course of the water sufficiently to cause the injury to the claimant. The result would have been the same with the culvert open and the trucks away. It was perhaps one of the worst storms that had been known in that section in many years and we do not think that the state did anything that was negligent. It is true as a matter of law that where the state assumes liability for defects in the highways the defects may consist of something other than mere defects in the surface of the highway, but as the storm was severe enough to raise the water at least ten feet over the highway the water certainly could not be deflected by the automobile trucks, nor could they be affected whether the culvert was open or closed. The state could not reasonably be expected to anticipate such an unusual condition.

The claim of the claimant is, therefore, dismissed

ACKERSON, P. J., concurs.

Judgment accordingly.